**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

| | | |
|---|---|---|
| JOSHUA ADAM MONROE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:15-cv-04172-NKL |
| | ) | |
| CMMG, INC., et. al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Plaintiff Joshua Monroe, a former employee of Defendant CMMG, brings this suit against CMMG and several CMMG employees for actions relating to Monroe's arrest on suspicion of theft. Seeking damages, Monroe's complaint sets forth six claims: defamation, malicious prosecution, negligence, fraudulent misrepresentation, and a Section 1981 claim [Doc. 1-3]. Before the Court is the Defendants' motion to dismiss. [Doc. 6]. For the following reasons, the motion is granted.

I.       **Background**

Defendant CMMG is a Missouri corporation that manufactures and sells firearms, firearm parts, and firearm components to the general public, to distributors, and to other manufacturers. Before March 28, 2013 Plaintiff Joshua Monroe was an employee of CMMG. Defendants James Watson, Tyson Bradshaw, Angela Strodtman, and Kathleen Stephenson were also employees of CMMG during this time.

1

On March 27, 2013, Stephenson, Monroe's supervisor, observed Monroe take a box from near his desk and carry it outside the building during the work day. Stephenson followed Monroe outside. After Monroe returned to the building without the box, Stephenson inspected the vehicle of a co-worker who had carpooled with Monroe to work that morning. Inside the vehicle, Stephenson saw the box, opened it, and found firearm barrels inside. Because the barrels had rubber caps that resembled those in CMMG's inventory, Stephenson stated that she suspected the barrels belonged to CMMG and that Monroe had stolen them.

Monroe, however, had not stolen the barrels. Instead he had purchased them from CMMG in an earlier transaction for which he later provided a receipt. CMMG employees were permitted to purchase products when there was sufficient inventory, and Defendant Strodtman knew that Monroe had bought products from CMMG in the past and had recently inquired about making further purchases. CMMG employees were also permitted to bring personal firearms into the CMMG building. While employees in these cases were required to notify a supervisor and place a sticker on their personal items, this procedure was not always followed.

CMMG employees, additionally, were not prohibited from leaving the building with a CMMG firearm. An employee performing a test fire or bringing a firearm to one of the outdoor inventory sheds would necessarily need to leave the building in order to do so.

Stephenson reported Monroe's behavior to her supervisor, Strodtman, who discussed the issue with Bradshaw, the operating manager. Strodtman and Bradshaw viewed security footage and Bradshaw then conducted an inventory count to determine whether any barrels were missing from the inventory room. Bradshaw said that CMMG had recently received a shipment of 500 barrels from Small Arms Manufacturing in addition to two sample barrels, and that inventory

count came up two barrels short. CMMG's purchase order, however, indicated that Small Arms had shipped only 482 barrels.

Someone representing CMMG contacted the Howard County Sheriff's Department on the evening of March 27 and reported that Monroe had stolen the barrels. Monroe does not identify who made that statement to the Sheriff's office. None of the voluntary statements by the Defendants contain such a statement and none of the deposition testimony in the complaint shows such a statement. Nonetheless, the Court construes this statement in the light most favorable to Monroe and accepts as true that CMMG reported that Monroe stole the barrels.

The next morning, on March 28, 2013, Monroe was arrested when he arrived at work and was later charged with theft. The two criminal cases subsequently filed against Monroe for misdemeanor stealing concluded when the prosecutor entered a *nolle prosequi.*

Monroe was also terminated from his position at CMMG around the time of his arrest. He applied for unemployment benefits, but the Missouri Labor and Industrial Relations Commission denied benefits because an "Employer Statement" provided to the Commission and Bradshaw in his testimony at the unemployment hearing, stated that Monroe had stolen the barrels.

Monroe originally filed this suit in Missouri state court on April 30, 2015. His Complaint contains seventeen counts: five counts of defamation, five counts of negligence, five counts of fraudulent misrepresentation, and one count each of malicious prosecution and a Section 1981 violation. The case was removed to this Court by CMMG.

## II.    Discussion

### A.  Federal Rule of Civil Procedure 8

3

The Defendants maintain that Monroe's Complaint should be dismissed because it does not comply with Federal Rule of Civil Procedure 8, which requires plaintiffs to plead "short and plain statements" such that "[e]ach allegation [is] simple, concise, and direct." Fed.R.Civ.P. 8(a)(2), 8(d). Monroe's Complaint covers 100 pages and contains 691 paragraphs. Of those 100 pages, over 50 consist of deposition transcripts from Monroe's criminal case. The Defendants are understandably frustrated by this approach, as is the Court.[1]

The purpose of Rule 8 is to "provide the defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Gomez v. Wells Fargo Bank, N.A.*, 676 F.3d 655, 665 (8th Cir. 2012). Rule 8 is also intended to avoid later surprises about the parameters of plaintiff's claims and to permit defendants and the court at an early stage to identify which claims are viable and which are not viable.

By including 50 pages of deposition testimony in his Complaint, Monroe has not complied with Federal Rule of Procedure 8. However, Monroe has asked leave to amend his complaint in the event the Court finds it deficient. Unfortunately, Monroe has been dilatory. He was put on notice by the Defendants of deficiencies in his Complaint and took no steps to meaningfully clarify his claims either in his opposition or by filing a proposed amended complaint. Therefore, the Court will only permit him to file an amended complaint on the condition that he pays Defendants their reasonable attorney fees and costs associated with their motion to dismiss. In addition, any permitted motion to amend must be filed within twenty days of the date of this order. The motion to amend must include a proposed amended complaint consistent with this order.

---

[1] Monroe's attempt to excuse his confusing approach by pointing to the pleading standard in Missouri courts is not persuasive. Missouri is a fact pleading state, which generally has a higher threshold than does a notice pleading jurisdiction, the standard applicable in federal court. However, even under Missouri pleading rules, the plaintiff needs to state the facts that support the specific elements of each claim in a way that ties the facts to the specific claims that they support.

In addition, as set out below, there are certain claims that cannot be salvaged because Monroe's opposition to the Defendants' Motion to Dismiss and the facts contained in Monroe's own Complaint demonstrate these claims are not viable. Those claims are: (1) Monroe's defamation claim against CMMG and Defendant Watson, based on reports made to the Howard County Sheriff's Department; (2) Monroe's defamation claim based on reports made to the Missouri Labor and Industrial Relations Commission in response to Monroe's application for unemployment benefits; (3) Monroe's malicious prosecution claim; and (4) Monroe's fraudulent misrepresentation claims. These claims are dismissed with prejudice and cannot be refiled in any amended complaint, even if the Defendants' costs are paid.

The defamation claims against Stephenson, Bradshaw, and Strodtman are dismissed without prejudice, as is the 1981 claim, and Monroe is given leave to file a motion to amend to state a claim for defamation against these defendants and for a 1981 claim against CMMG. Any such motion must comply with Rule 11 and include a proposed amended complaint which identifies the specific statements by these defendants that are alleged to be false, how the statements are capable of a defamatory meaning, and with what degree of fault they were published. The motion to amend must be filed within 20 days of the date of this order. If Monroe fails to meet this deadline, the remaining claims will be dismissed against the remaining defendants with prejudice.

Monroe will not be given any additional opportunity to amend.

**B. Defamation**

To state a claim for defamation, a plaintiff in Missouri must plead: "1) publication, 2) of a defamatory statement, 3) that identifies the plaintiff, 4) that is false, 5) that is published with the requisite degree of fault, and 6) damages the plaintiff's reputation." *Farrow v. Saint Francis*

*Med. Ctr.*, 407 S.W.3d 579, 598-99 (Mo. 2013) (*quoting Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62, 70 (Mo. banc 2000)). A defamation claim that pleads these elements will survive a motion to dismiss "if the communication alleged in the petition . . . is capable of a defamatory meaning." *Klein v. Victor*, 903 F.Supp. 1327, 1330 (E.D. Mo. 1995).

### 1. CMMG's Statement to the Police

Any claim based on CMMG's initial statements to the Howard County Sheriff's Department is barred by the statute of limitations. A claim for defamation must be brought within two years of accrual, and accrual occurs when "the damage resulting [from the defamation] is sustained and capable of ascertainment." Mo. Rev. Stat. § 516.100. Damage is sustained when a "[p]laintiff's reputation interest is invaded," which happens "at the time of publication." *Jones v. Pinkerton's, Inc.,* 700 S.W.2d 456, 458 (Mo. Ct. App. 1985). A claim is capable of ascertainment when "a reasonable person would have been put on notice that an injury and substantial damages may have occurred and would have undertaken to ascertain the extent of the damages." *Powel v. Chaminade College Preparatory, Inc.*, 197 S.W.3d 576, 584 (Mo. banc 2006). Because a reasonable person is on notice "when the fact of damage can be discovered or made known," *Klemme v. Best*, 941 S.W.2d 493, 497 (Mo. banc 1997), Missouri courts generally find that damages are ascertainable at the time of publication as well, *Farrow*, 407 S.W.3d at 599 (stating that a defamation claim generally "must be brought within two years of the publication of the defamatory statement").

According to Monroe's Complaint, CMMG's initial statements were made on March 27, 2013, the date of the incident, but Monroe did not file suit in state court until April 30, 2015, over two years later. Monroe argues, however, that the general accrual rule does not apply in his case. Because CMMG's statements on March 27, 2013 were published in police incident

6

reports, and because a reasonable person cannot be expected to "continually review all incident reports filed by individuals in all police stations across the state," Monroe argues he was not "capable of ascertaining that false police incident reports had been filed. . . on March 27, 2013." [Doc. 23, p. 18].

Monroe's argument is unpersuasive because he has alleged that CMMG provided false statements to the Sheriff that led to his arrest. When Monroe was placed in custody one day after CMMG made statements to the Sheriff, he was told that "[CMMG] has reported to the Sheriff's Department that the rifle barrels allegedly carried out of his employer's building the night before [and] placed in [Monroe's] vehicle were the property of [CMMG]." [Doc. 23, p. 19]. As such, Monroe was expressly informed of the alleged defamatory statements on March 28, 2013 and thus his claim accrued at that time. Furthermore, because the parties do not dispute the date the statements were published, the date Monroe was arrested, or the information provided to Monroe upon his arrest, the Court may presently determine this accrual date as a matter of law. *State ex rel. Marianist Province of U.S. v. Ross*, 258 S.W.3d 809, 811 (Mo. banc 2008) ("[W]hen relevant facts are uncontested, the statute of limitations issue can be decided by the court as a matter of law.").

Monroe nevertheless argues that, because he could provide receipts demonstrating that the barrels were his personal property, he reasonably assumed on March 28 that the matter would be quickly resolved in his favor and that the police report, along with the defamatory statements it contained, would be sealed and thereafter incapable of ascertainment. Yet under the objective "capable of ascertainment" test, a reasonable person is on notice when "damages *may* have occurred" as the result of a "*potentially* actionable injury." *Powel*, 197 S.W.3d at 584 (emphasis added). Even if Monroe reasonably assumed he would be quickly cleared of all suspicion,

Monroe plainly was on notice that damage may have occurred when he was taken into custody on March 28, 2013.

Monroe's defamation claim against CMMG (Count 2) is dismissed with prejudice.

### 2. Strodtman's Statement to the Police

According to Monroe's Complaint, Strodtman stated to the Howard County police that "Stephenson had approached [her] at CMMG at 5:30 PM [on] March 27, 2013 and Stephenson told her, "that she observed an employee Josh Monroe take a barrel box out of the office at approximately 12 noon."" [Doc. 1-3, p. 7, ¶ 22].

Unlike the statements made by CMMG, any statements attributed to Strodtman are not barred by the statute of limitations because, as currently alleged, Monroe was not aware at the time of his arrest which CMMG employees had made defamatory statements to the police. However, Monroe's defamation count against Strodtman must still fail because he does not allege what specific statements by Strodtman were false. In fact, when considering the entirety of his Complaint, Monroe appears to agree with the narrative provided in Strodtman's statement. Although he makes a statement in his opposition that all statements made by all defendants were false, the Complaint as a whole does not support that allegation. He has not anywhere suggested that he did not take the box out of the building or that he was not observed by anyone or that his actions were never reported to Strodtman. Consequently, Monroe has not alleged a viable claim that Strodtman published a false statement to police, because he has not alleged what false statement Strodtman made to the police. Monroe's defamation claim against Strodtman (Count 5) is dismissed without prejudice.

### 3. Bradshaw's Statement to the Police

8

Similarly, despite asserting a defamation claim against Bradshaw, Monroe appears to largely agree with the statements Bradshaw made to the Howard County police. According to the Complaint, Bradshaw told police that "several employees observed Josh Monroe take what appeared to be a package containing rifle barrels," that Stephenson reported "discover[ing] two barrels in the package," and that after learning about this situation, Bradshaw reviewed security footage, which "confirmed [] the testimony of [Stephenson]." [Doc. 1-3, pp. 18-19, ¶ 59]. Again, Monroe's Complaint seems to support this narrative. *See, e.g.,* [Doc. 1-3, p. 4, ¶ 13] ("Co-Defendant Bradshaw and other employees or agents of CMMG watched a security video . . . ").

Therefore, Monroe has alleged only one arguably false statement attributable to Bradshaw: Bradshaw's conclusion that "[i]t is my belief that the barrels in question were received as samples prior to the order of 500 we received days later, [as] I personally conducted an inventory and the count reflected that we were short two barrels." [Doc. 1-3, pp. 18-19, ¶ 59]. Yet this statement, as well, cannot form the basis of a defamation claim because it is expressed in the form of an opinion. A statement of opinion is absolutely privileged against defamation claims. *Nazeri v. Missouri Valley College*, 860 S.W.2d 303, 306 (Mo. banc 1993). Whether a statement is one of fact or opinion, moreover, is a question of law that the Court may decide on a motion to dismiss. *Clinch v. Heartland Health*, 187 S.W.3d 10, 17 (Mo. Ct. App. 2006).

In drawing this line between opinion and fact, Missouri courts ask whether "a reasonable factfinder could conclude that the statement implies an assertion of objective fact." *Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62, 73 (Mo. 2000) (*citing Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18). Bradshaw's statement indicates he *thought* Monroe removed the sample barrels from the building, and such belief cannot be objectively verifiable. *Pape v. Reither*, 918 S.W.2d

9

376, 380 (Mo. Ct. App. 1996) (finding that the phrases "it is my position" and "it is my belief" cannot posit a verifiable proposition and therefore are statements of opinion). *See also Mandel v. O'Connor*, 99 S.W.3d 33, 38 (Mo. Ct. App. 2003) (upholding the trial court's determination that a statement was an opinion because, among other reasons, the defendant couched his conclusion with the phrase "it would appear").

As presently pled, Monroe has not alleged a defamation claim against Bradshaw. Count 3 is dismissed without prejudice.

### 4. Stephenson's Statement to the Police

Stephenson's statement to the police, as alleged in Monroe's Complaint, offers a narration of the events of March 27 that is also largely consistent with the allegations made elsewhere in the Complaint. Stephenson's statement, however, contains some added details that Monroe's counsel challenged during her deposition. For example, Stephenson stated that Monroe left the building with a "brown box with a black tie," [Doc 1-3, p. 6, ¶ 20], yet in her deposition she described the item as a "white box," [Doc 1-3, p. 44, ¶ 253], before later appearing to clarify that the white boxes were used for priority mail and cannot contain barrels. Similarly, Stephenson allegedly stated to police that she "definitely [saw] one barrel, but saw another "stick" with a smooth end." [Doc 1-3, pp. 16-18, ¶ 53]. Yet in her deposition, Stephenson testified that she observed three barrels in the box.

The Court thus understands Monroe's Complaint to allege that Stephenson made false statements concerning the box Monroe removed from the building and the number of barrels she saw in the car. Even so, these statements are not capable of a defamatory meaning. To determine whether statements are capable of a defamatory meaning, alleged defamatory words must "be stripped of any pleaded innuendo . . . and construed in their most innocent sense."

Case 2:15-cv-04172-NKL   Document 34   Filed 12/30/15   Page 10 of 24

*Sterling v. Rust Commc'ns*, 113 S.W.3d 279, 282 (Mo. Ct. App. 2003) (*citing Nazeri v. Missouri Valley College*, 860 S.W.2d 303, 311 (Mo. banc 1993)). The color of Monroe's box and the number of barrels in the car, taken alone and construed innocently, do not suggest that Monroe stole either of these items. Under the second *Nazeri* standard, the statements "must be considered in context, giving them their plain and ordinarily understood meaning." *Id.* (*citing Nazeri*, 860 S.W.2d at 311). While Stephenson's statements were made as part of a police investigation into Monroe's actions, Monroe appears to agree, as discussed above, that he indeed removed a box from the building that contained multiple barrels. Therefore, in the context of the investigation, Monroe alleges only that Stephenson described the boxes and barrels differently— not that she claims these items were CMMG's property. The Court thus cannot say these statements are capable of a defamatory meaning as they are currently alleged.

Finally, the Complaint quotes Stephenson stating that Monroe's actions "seemed odd." [Doc. 1-3, pp. 16-18, ¶ 53]. This statement is an expression of opinion and, as such, also does not form the basis of a defamation claim.

Monroe's defamation claim against Stephenson (Count 4) is dismissed without prejudice.

### 5. Watson's Statement to the Police

While Monroe asserts a defamation claim against all the Defendants, including Watson, he has not identified any statements that Watson allegedly made to the Howard County police. In his Suggestions in Opposition, Monroe argues that Watson is vicariously liable for the statements of Defendants because they operated under his supervision on March 27, the date their statements were published.

Even assuming Monroe has properly pled Bradshaw, Strodtman, and Stephenson's underlying defamatory statements, Watson is not liable for the statements of co-employees

11

absent some involvement in their publication. While Missouri courts have found that an employer may be liable for defamatory employee statements, *Carter v. Willert Home Products, Inc.*, 714 S.W.2d 506 (Mo. 1986) (*abrogated on other grounds by Nazeri v. Missouri Valley College*, 860 S.W.2d 303 (Mo. 1993)), they have not extended this rule to supervisors. In fact, Missouri law grants qualified privilege to many intra-company supervisor communications. *See Rice v. Hodapp*, 919 S.W.2d 240, 243-45 (Mo. 1996). If Watson's statements to co-employees would be subject to protection against a defamation claim, then his relationship with those co-employees, absent any alleged communication, plainly cannot give rise to liability.

Monroe's defamation claim against Watson is dismissed with prejudice.

### 6. Statements Made to the Missouri Labor and Industrial Relations Commission

Finally, Monroe alleges that Defendant CMMG published defamatory statements in an "Employer Statement" sent to the Missouri Labor and Industrial Relations Commission. According to Monroe's Complaint, CMMG wrote this letter in response to his application for unemployment benefits. *See* [Doc. 1-3, p. 21, ¶ 68] ("The Employer Statement arose out of [Monroe's] application for unemployment benefits resulting from his discharge of employment with CMMG.").

The CMMG argue that its statements are entitled absolute privilege under the witness immunity rule, which provides that "statements made during proceedings of a judicial or quasi-judicial body are absolutely privileged if they are relevant to the issues before the body." *Li v. Metro. Life Ins. Co.*, 955 S.W.2d 799, 803 (Mo. Ct. App. 1997). In such cases, because these statements are absolutely privileged, "the speaker is immunized "from liability in a subsequent defamation action even if the [speaker's] statement[][was] made with malice." *Wunsch v. Sun Life Assur. Co. of Canada*, 92 S.W.3d 146, 156 (Mo. Ct. App. 2002) (*quoting Murphy v. A.A.*

*Mathews, Div. of CRS Group Eng'rs, Inc.,* 841 S.W.2d 671, 675 (Mo. banc 1992)). An agency proceeding constitutes the proceeding of a quasi-judicial body if the agency exercises "traditional judicial powers" such as by "conducting [] hearings at which witnesses may be summoned and examined, documents subpoenaed, and judgments handed down." *Remington v. Wal-Mart Stores, Inc.*, 817 S.W.2d 571, 574 (Mo. Ct. App. 1991) (*quoting* 45 A.L.R.2d 1296, 1298 (1956)).

In *Remington*, the Missouri Court of Appeals agreed with earlier Missouri court holdings that "[p]ublication of [a] letter [of protest] to the Missouri Division of Employment Security is absolutely privileged pursuant to [Mo. Rev. Stat.] § 288.250." *Id.* at 575 (*quoting Tucker v. Delmar Cleaners, Inc.,* 637 S.W.2d 222, 224 (Mo. Ct. App. 1982)). The *Remington* court therefore concluded that "[the plaintiff] cannot evade the common law and statutory status of the letter of protest as an absolutely privileged communication." *Id.*

The "Employer Statement" described in Monroe's Complaint falls squarely within the framework discussed by *Remington*. Because the "Employer Statement" was related to the finding that "[Monroe] had been discharged from his job at CMMG for 'Aggravated Misconduct,'" [Doc. 1-3, p. 21, ¶ 70], it is considered an employer protest letter, *see* Mo. Rev. Stat. § 288.070.1, the same document that allegedly contained false statements in *Remington*.

Just as in *Remington*, therefore, CMMG's statements to the Labor and Industrial Relations Commission are entitled absolute privilege and protected from a defamation claim even if the statements were published with malice. Defendant Bradshaw's testimony before the Commission is equally covered by the witness immunity rule because it was made during the proceeding of this quasi-judicial body. *See Li*, 955 S.W.2d at 803.

13

Accordingly, Monroe's defamation claim is dismissed in its entirety. Counts 1 and 2 are dismissed with prejudice. Counts 3, 4, and 5 are dismissed without prejudice.

### C. Malicious Prosecution

The Defendants argue that Monroe has not properly pled the elements of malicious prosecution. A plaintiff claiming malicious prosecution must allege six elements: "(1) the commencement of an earlier suit against plaintiff, (2) instigation of the suit by defendant, (3) termination of the suit in plaintiff's favor, (4) lack of probable cause for the suit, (5) malice by defendant in instituting the suit, and (6) damages to plaintiff resulting from the suit." *Davis v. Bd. of Educ. of City of St. Louis*, 963 S.W.2d 679, 684-85 (Mo. Ct. App. 1998) (*citing State ex rel. Police Ret. Sys. v. Mummert*, 875 S.W.2d 553, 555 (Mo. banc 1994)). While Missouri requires "strict proof of each element of the tort" because public policy encourages citizen involvement in reporting crimes, *Sanders v. Daniel Int'l Corp.*, 682 S.W.2d 803, 806 (Mo. banc 1984), plaintiffs are not held to this standard on a motion to dismiss, *see Bramon v. U-Haul, Inc.*, 945 S.W.2d 676, 679 (Mo. Ct. App. 1997) (reversing trial court's dismissal of malicious prosecution count for failure to state a claim).

Pointing to these elements, the Defendants argue that the earlier suit against Monroe—the criminal charges that were brought against him in Howard County—did not terminate in Monroe's favor. When establishing a claim of malicious prosecution, an earlier suit is considered terminated by "1) . . . final judgment on the merits; 2) dismissal of a cause by the court with prejudice, and 3) abandonment of the action." *Kelley v. Kelly Residential Grp., Inc.*, 945 S.W.2d 544, 550 (Mo. Ct. App. 1997). An earlier suit is generally not considered terminated, however, if it was dismissed without prejudice. *Shinn v. Bank of Crocker*, 803

S.W.2d 621, 626 (Mo. Ct. App. 1990) (*citing Zahorsky v. Barr, Glynn and Morris, P.C.,* 693 S.W.2d 839, 842 (Mo. Ct. App. 1985)).

Monroe's criminal case did not conclude with a judgment on the merits or a dismissal with prejudice. Rather, as Monroe's Complaint states, the case ended when the prosecutor entered a *nolle prosequi*, which alone does not indicate termination. *Doyle v. Crane*, 200 S.W.3d 581, 590 (Mo. Ct. App. 2006) ("[T]he State's *nolle prosequi* . . . in and of itself did not constitute a termination of the [plaintiff's] criminal case."). Monroe's Complaint must consequently allege that the prosecutor abandoned the action. To do so, the prosecutor must have "manifest[ed] an intent to abandon" Monroe's case. *Id.* (*citing Shinn*, 803 S.W.2d at 625).

In *Shinn*, the Missouri Court of Appeals found that the prosecutor manifested an intent to abandon the plaintiffs' earlier case, even though it was dismissed without prejudice, because the record indicated an agreement whereby the plaintiffs would pay court costs and the prosecutor, in turn, would cease prosecuting the case. "Absent such an agreement there would have been no inducement for the [plaintiffs] to pay the costs," the court reasoned, and it is thus "inferable that the prosecutor specified the initial dismissals were without prejudice so he could refile the charges if the [plaintiffs] reneged." *Shinn,* 803 S.W.2d at 626.

*Shinn* therefore stands for the proposition that a prosecutor manifests an intent to abandon when he wants to dismiss a case with prejudice, but has some reason to dismiss it without prejudice nevertheless. *See Zike v. Advance Am.*, 2010 WL 1816747, at *9 (E.D. Mo. May 3, 2010), *affirmed* 646 F.3d 504 (8th Cir. 2011) ("[T]he [*Shinn*] court found that a prosecutor's dismissal without prejudice was a termination in the defendants' favor because the record reflected that there had been an agreement that the defendants were to pay costs and the "without

15

prejudice" qualification was only included to provide the prosecutor with a remedy, i.e., the refiling of the charges, if the defendants failed to do so.")

Monroe argues that his case is analogous to *Shinn* because "[t]he Prosecutor knew, at the time of the September 03, 2014 Nolle Prosequi, that the Statute of Limitations would not allow for the re-filing of charges against [Monroe] and, therefore, both criminal proceedings terminated in favor of [Monroe]."  [Doc. 1-3, p. 82, ¶ 595].  Yet Monroe's Complaint does not allege that the prosecutor wanted to dismiss his case with prejudice and had a reason to enter a *nolle prosequi* instead.  While the Complaint indicates the prosecutor may have known she could not refile the charges, it does not explain why she still chose to dismiss those charges without prejudice.  The Court thus applies the general rule that a dismissal without prejudice does not constitute termination.  As such, Monroe has not pled that the criminal case terminated in his favor and cannot maintain a claim for malicious prosecution.

Count 6 is dismissed with prejudice.

**D. Negligence**

To state a claim for negligence under Missouri law, a plaintiff must plead "a (1) legal duty on the part of the defendant to conform to a certain standard of conduct to protect others against unreasonable risks; (2) a breach of that duty; (3) a proximate cause between the conduct and the resulting injury; and (4) actual damages to the claimant's person or property." *Howard v. Frost Nat'l Bank*, 458 S.W.3d 849, 853 (Mo. Ct. App. 2015) (*quoting Hoover's Dairy, Inc. v. Mid-Am. Dairymen, Inc./Special Products, Inc.*, 700 S.W.2d 426, 431 (Mo. banc 1985)).  As the Missouri Supreme Court has remarked, "negligence depends upon the surrounding circumstances and the particular conduct involved, because an act or omission which would

clearly be negligent in some circumstances would not be negligent in others." *Tharp v. Monsees*, 327 S.W.2d 889, 893 (Mo. banc 1959).

Therefore most elements of negligence present questions of fact a court will not resolve at the motion to dismiss stage. *Luallen v. Reid*, 58 S.W.3d 50, 53 (Mo. Ct. App. 2001) ("Where reasonable minds could infer negligence, determinations of breach of duty are questions of fact for the finder of fact, not questions of law for this court."). *See also Lambert Bros. v. Tri City Const. Co.*, 514 S.W.2d 838, 846 (Mo. Ct. App. 1974) ("Ordinarily, whether [a driver] was negligent or contributorily negligent . . . and whether such negligence was the proximate cause of [injury], are questions of fact for the determination of the jury."). The exception is the first element—existence of a legal duty—which "is unique among the elements of negligence because the existence of duty is a question of law to be decided by the court." *Leeper v. Asmus*, 440 S.W.3d 478, 482 (Mo. Ct. App. 2014) (*quoting Hansen v. Ritter,* 375 S.W.3d 201, 208 (Mo. Ct. App. 2012)).

Monroe alleges five counts of negligence against the Defendants. In each count, his Complaint states that the defendant "had a duty to conduct an investigation with reasonable care prior to submitting incident reports" and "had a duty to retract false statements made to Howard County Sheriff's Department." [Doc. 1-3, p. 83, ¶¶ 599, 601].

CMMG, citing *Wirth v. Coll. of the Ozarks*, 26 F.Supp. 2d 1185 (W.D. Mo. 1998), argues that Missouri law does not recognize a duty to conduct an investigation with reasonable care. In *Wirth*, a college was sued by its former employee, who argued that "the college negligently failed to investigate his concerns during his removal from tenure." *Wirth*, 26 F.Supp. 2d at 1188. The district court granted a motion to dismiss this claim, and in doing so noted that "Missouri courts have not recognized a tort of 'negligent investigation.'" *Id.* at 1189.

17

In other words, the former employee in *Wirth* argued that the college, which had not investigated his concerns, had a legal duty to do so. The district court disagreed and found that no such duty exists. *Wirth* thus holds that a college has no duty to conduct any investigation before removing an employee and terminating his employment, so it follows that an employer, should it choose to undertake an investigation before terminating an at-will employee, has no duty to conduct this investigation reasonably. Because Monroe alleges, in part, that the Defendants' investigation led to his termination, he cannot maintain this component of his negligence claim.

The remainder of Monroe's negligence claim is premised on a duty to investigate before submitting incident reports to the police and a duty to retract the false incident statements after they were made. Both of these alleged duties sound in defamation and thus do not provide a basis for recovery in negligence. Under Missouri law, "an action alleging damages based upon untrue statements sounds in defamation" and thus "the appropriate remedy is by defamation." *Henry v. Taft Television & Radio Co.*, 774 S.W.2d 889, 892 (Mo. Ct. App. 1989) (*quoting Hester v. Barnett,* 723 S.W.2d 544, 563 (Mo. Ct. App. 1987)). While the courts in *Henry* and *Hester* were discussing allegations plead as invasion of privacy torts, the holdings of other Missouri courts demonstrate that a claim of "untrue statements" can only proceed under a defamation count. *See, e.g., Barber v. Time, Inc.*, 159 S.W.2d 291, 296 (Mo. 1942) (stating that "any action seeking damages for an untrue statement should be in libel," and therefore such claim needed to be distinct from an invasion of privacy count); *Nazeri v. Missouri Valley Coll.*, 860 S.W.2d 303, 315 (Mo. banc 1993) (finding that, while the plaintiff could plead a prima facie tort claim in the alternative to her defamation count, both counts contained the same allegations of untrue statements and thus recovery should be in defamation).

18

Monroe's claim for negligence premised on the statements made to Howard County police must therefore fail. His defamation claim, in part, alleges that the Defendants provided untrue statements to the Howard County Sheriff's Department, and as a result Monroe suffered financial and emotional injury. His negligence claim also alleges that the Defendants provided untrue statements to the Howard County Sheriff's Department, and that their failure to investigate beforehand or retract these statements afterwards caused Monroe financial and emotional harm. Because this component of the negligence claim tracks Monroe's defamation claim and alleges breach stemming only from the publication of false statements, it cannot stand as an independent ground for recovery in negligence.

Consequently, Monroe's negligence claim (Counts 7-11) is dismissed with prejudice.

**E. Fraudulent Misrepresentation**

In his Suggestions in Opposition, Monroe "request[ed] leave to withdraw all counts relating to fraudulent misrepresentation." [Doc. 23, p. 30]. The Court thus grants the Defendants' motion to dismiss these counts (12, 13, 14, 15, and 16) with prejudice.

**F. 1981 Claim**

The Defendants finally argue that Monroe has not stated a claim for relief under Section 1981. Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). As Congress clarified in a 1991 amendment, "the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

Case 2:15-cv-04172-NKL   Document 34   Filed 12/30/15   Page 19 of 24

A claim brought under § 1981 must therefore plead "an impaired contractual relationship under which the plaintiff has rights." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006) (internal quotations omitted). The impairment must stem from "racial discrimination" and affect a contract that is either "existing or proposed." *Id*. Once neither party has remaining duties to perform under a contract, the plaintiff lacks rights under that contract and cannot maintain a § 1981 claim. *Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851, 854 (8th Cir. 2001).

In their briefings, Monroe and CMMG dispute the nature of the contractual relationship that Monroe alleges has been impaired. The Complaint states that "CMMG developed a system to categorize certain acts and characteristics of [Monroe], a member of a racial minority, to support termination of his employment, and subsequent false reports to law enforcement and the Missouri Division of Employment Security." [Doc. 1-3, p. 104, ¶ 686]. Monroe clarifies this statement in his Suggestions in Opposition, where he argues that race played a deciding role in CMMG's investigation and its "instigation of legal action," [Doc. 23, p. 31], which in turn led to his termination. CMMG responds that Monroe's claim, by focusing on the investigation, is not "tethered" to an impaired contractual relationship for purposes of § 1981. [Doc. 24, pp. 9-10].

Under either perspective, Monroe has identified a contractual relationship that may give rise to a § 1981 claim. Even assuming Monroe was an at-will employee of CMMG, the parties' employer-employee relationship created contractual rights for the purposes of a § 1981 action. *Turner v. Arkansas Ins. Dept.*, 297 F.3d 751, 759 (8th Cir. 2002) (finding that at-will employees can sue for employment discrimination under Section 1981). And even assuming Monroe has claimed only indirect impairment of that relationship, he still alleges that the Defendants' investigation of his behavior led to the criminal charges and his termination, and thus that they

thwarted his contractual rights.  *See Green v. Dillard's, Inc.*, 483 F.3d 533, 538 (8th Cir. 2007) (Section 1981 "reaches beyond the four corners of a contract," and so plaintiffs can avoid summary judgment by stating facts from which a jury could conclude that defendants' acts "were enough to thwart the [plaintiffs'] ability to complete their [contract]").

Monroe can therefore maintain a § 1981 claim if he has pled that this contractual relationship was impaired by racial discrimination.   In the absence of evidence of direct discrimination, a plaintiff maintains a prima facie case of racial discrimination in the employment context by showing "(1) he is a member of a protected class, (2) he met his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination."  *Young v. Builders Steel Co.*, 754 F.3d 573, 577 (8th Cir. 2014) (*quoting Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012)).  Under Eighth Circuit precedent, an inference of discrimination is generally shown where the plaintiff was "treated differently than similarly situated persons who are not members of the protected class."  *Bennett v. Nucor Corp.*, 656 F.3d 802, 819 (8th Cir. 2011) (*citing Johnson v. Ready Mixed Concrete Co.*, 424 F.3d 806, 810 (8th Cir. 2005).  *See also Smith v. URS Corp.*, 803 F.3d 964, 969 (8th Cir. 2015) (discussing how Eighth Circuit cases describe the fourth prong as both "circumstances giv[ing] rise to an inference of discrimination" and allegations that "similarly situated employees . . . were treated differently").[2]

---

[2]     The Eighth Circuit has also held that the fourth prong—circumstances giving rise to an inference of discrimination—can be shown when an employer "failed to follow its own policies" or "shifted its explanation of the employment decision."  *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010).  Monroe does not argue that either of these situations apply to his case.  He has not alleged that CMMG ever stated a basis for its actions and employment decisions aside from Monroe's suspected crime.  And while Bradshaw's testimony indicates that CMMG did not follow its policy requiring employees to place stickers on personal firearms, Monroe does not allege CMMG ever cited this policy as reason for being suspicious of his conduct or terminating his employment.

21

At the motion to dismiss stage, however, the plaintiff does not need to prove a prima facie case. *Hager v. Arkansas Dep't of Health*, 735 F.3d 1009, 1014 (8th Cir. 2013) (*citing Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 510 (2002)). Rather the plaintiff must only plead enough facts to state a prima facie case that "is plausible on its face." *Id*. (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Monroe has not met this threshold. In his Complaint, Monroe provides the transcript from Defendant Bradshaw's deposition, where Bradshaw stated that CMMG had lax policies regarding personal firearm possession. An employee bringing a personal firearm to work was supposed to notify a supervisor and place a sticker on the item to differentiate it from CMMG's firearms, but this procedure was not always followed and employees, presumably, could bring personal firearms in and out of the building during their breaks. Defendant Strodtman similarly stated in a deposition that employees had reason to leave the building with firearms when going outside to perform a test fire or take products to an inventory shed, and therefore she would not assume, from simply viewing an employee leaving the building with a firearm, that he was committing a crime. Strodtman further stated that she is not aware of a CMMG employee being arrested for walking out of the building with a box of firearm parts.

In his Complaint, Monroe alleges that: "While Plaintiff was in their employ Defendant CMMG developed a system to categorize certain acts and characteristics of Plaintiff, a member of a racial minority, to support termination of his employment, and subsequently false reports to law enforcement and the Missouri Division of Employment Security. Defendant CMMG's observation of similar acts and characteristics of their white employees did not result in the same termination of employment, false statements to law enforcement and the Missouri Division of Employment Security." [Doc. 1-3, p. 104, ¶ 686]. At best, Monroe has alleged that he was

Case 2:15-cv-04172-NKL   Document 34   Filed 12/30/15   Page 22 of 24

similarly-situated to other employees observed leaving the building with a box that might contain CMMG property. But Monroe was not terminated for leaving the building with property belonging to CMMG. He was fired after he put the property in a car he came to work in. He has not alleged that white employees were not disciplined under similar circumstances. *See Hager*, 735 F.3d at 1015 (*citing Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190–91 (4th Cir. 2010) (to survive a motion to dismiss, a plaintiff cannot simply identify a white employee to compare, but must also offer factual allegations plausibly suggesting the comparator was similarly-situated)).

Monroe's Complaint fails to offer such an allegation, much less with any specificity. Accordingly, he has not stated a claim for relief under Section 1981.

Count 17 is dismissed without prejudice.


**III.  Conclusion**

The Defendants' motion to dismiss [Doc. 6] is granted as follows:

- Counts 1, 2, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, and 16 are dismissed with prejudice.

- Counts 3, 4, 5, and 17 are dismissed without prejudice.

Monroe is given leave to file a motion to amend his complaint consistent with this order, no later than twenty days after the date of this order. That motion must be accompanied by a proposed amended Complaint, which is consistent with this order. If Monroe fails to file a motion to amend his complaint within twenty days of this order, the Court's order of dismissal is final and Monroe will not be given any additional opportunity to file an amended complaint.


s/ Nanette K. Laughrey

23

NANETTE K. LAUGHREY
United States District Judge

Dated: <u>December 30, 2015</u>
Jefferson City, Missouri